# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BOBBY E. MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-15-450-RAW-SPS |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Bobby E. Miller requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  42 U.S.C. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  whether the decision was supported by substantial evidence, and whether the correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted].  The term "substantial evidence" requires "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the Court

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on May 31, 1950, and was sixty-five years old at the time of the most recent administrative hearing (Tr. 25, 221). He completed tenth grade, and has no past relevant work (Tr. 18, 249). The claimant alleges he has been unable to work since January 1, 1994, due to his lungs, heart, and diabetes (Tr. 248).

### Procedural History

On October 20, 2013, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied. ALJ Jeffrey S. Wolfe held an administrative hearing and determined the claimant was not disabled in a written decision dated June 23, 2015 (Tr. 12-20). The Appeals Council denied review, so the ALJ's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that, from the claimant's alleged onset date of January 1, 1994 through the date last insured of December 31, 1997, the claimant retained the residual functional capacity (RFC) to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b), *i. e.*, he could lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk for six hours during an eight-hour workday and had no limitations

on his ability to sit. Additionally, the ALJ found the claimant could frequently handle and finger bilaterally, but that he could only occasionally reach overhead bilaterally, crouch, kneel, bend, and squat. Finally, the ALJ found the claimant must refrain from exposure to noxious dusts, odors, gases, fumes, and areas of poor ventilation in the workplace (Tr. 16). The ALJ thus concluded that although the claimant had no past relevant work to return to, he was nevertheless not disabled because there was work he could perform, *i. e.*, mail clerk, bakery worker, and counter clerk (Tr. 18-20).

**Review**

The claimant contends that the ALJ erred by: (i) relying solely on the opinion of the physician who testified at the administrative hearing rather than evaluating all the evidence in formulating his RFC, (ii) failing to properly weigh a treating physician opinion that the claimant was disabled, and (iii) improperly assessing his credibility. The undersigned Magistrate Judge agrees that the Commissioner's decision should be reversed and remanded.

The ALJ determined that the claimant had the severe impairments of chronic obstructive pulmonary disease and status-post bilateral carpal tunnel surgeries on the right and left (Tr. 15). During the relevant time period for this case, records from the Veteran's Administration (VA) indicate that the claimant underwent carpal tunnel release for both wrists, was considered to have moderately active pulmonary inflammatory disease, and there was some consideration given to whether the claimant had asbestosis given pleural calcification on the diaphragm (Tr. 295, 299, 324, 328, 379-393, 397-398,

473, 636). Scans related to the claimant's lungs were considered to be slightly worsened in February 1994 compared to a November 1993 scan (Tr. 329).

On July 6, 1992, Dr. Carson Todd examined the claimant and noted he had a history of Raynaud's syndrome, multiple aches and pains, multiple tender pressure points through his back, and could only elevate his shoulders to 120 degrees (Tr. 394). The claimant also had a positive rheumatoid factor and degenerative changes in his back (Tr. 395). Dr. Todd requested the ability to do further testing and blood work but it is not clear from the record that this was followed up, and it appears that the VA did not consider the claimant eligible for a rheumatology consult (Tr. 395, 519). On May 19, 1993, Dr. Snorri Olafsson drafted a letter stating that the claimant was under his care for chronic lung disease. Dr. Olafsson stated that the claimant was disabled for any type of work for an indeterminable period of time (Tr. 486). Following x-rays of the lumbar spine in September 1994, the claimant was diagnosed with degenerative facet arthrosis L5-S1, with S1 radiculopathy (Tr. 456). In August 1994, the claimant was diagnosed with tinnitus and dizziness, and referred to an ENT clinic (Tr. 457). On September 8, 1995, following audiology testing and CT scans, the claimant was considered a candidate for hearing aids, but wanted to wait at that time (Tr. 441).

At the most recent administrative hearing, the claimant testified that during the relevant time his breathing problems got really bad, and has been on some type of inhaler since 1993 (Tr. 41-42). He testified that he left his job at a nursery because he could not perform the walking requirements and his breathing was suffering (Tr. 42). He testified that he did not get a good result from his carpal tunnel release surgeries, and that his

hands would still cramp, swell, and twist (Tr. 45). Additionally, Dr. Subramaniam Krishnamurthi testified as an impartial medical expert. His testimony was that the claimant's impairments did not meet or equal a listing, and that the claimant complained of back pain but had no diagnosis (Tr. 51-52). He then opined that the claimant's breathing problems were stable during the relevant period, and had not worsened (Tr. 57-58). When asked if the claimant had a failed carpal tunnel release, Dr. Krishnamurthi stated that he did not because there were no records following the procedures (Tr. 59). He then stated there were no other impairments, and that his limitations would be the ability to lift twenty pounds occasionally and ten pounds frequently, with no sitting limitation, and the ability to stand/walk six hours in an eight-hour workday, and no more than occasional reaching overhead, with no grasping or fingering limitations and a limitation to occasional for postural. Finally, he indicated that dusts, odors, and pulmonary irritants would need to be accounted for (Tr. 60). When the claimant's representative pointed out the records regarding the claimant's hearing loss and asked Dr. Krishnamurthi about whether the claimant would need to be limited to a quiet environment, Dr. Krishnamurthi indicated he was not qualified to address it (Tr. 64-66).

  In his written opinion, the ALJ summarized the claimant's hearing testimony, as well as Dr. Krishnamurthi's hearing testimony, and summarized a portion of the medical evidence pertaining to the closed period. At step two, the ALJ noted that he gave Dr. Krishnamurthi's opinion as a whole "great weight," finding that it was based on the evidence of record (Tr. 15). At step four, the ALJ noted the claimant had moderately active pulmonary inflammatory disease, but noted Dr. Krishnamurthi's finding that he

did not require a nebulizer during that time and concluded that the claimant did not require more than inhalers (Tr. 18). He did not discuss the claimant's carpal tunnel, or hearing loss, or any other nonsevere impairments. Additionally, the ALJ used boilerplate language to find the claimant not credible, and gave great weight to the opinions of the state reviewing physicians (Tr. 18).

As part of his argument that the ALJ improperly evaluated his RFC by relying solely on Dr. Krishnamurthi's testimony, the claimant asserts that the ALJ ignored evidence and failed to failed to account for the severity of his COPD, and further ignored additional impairments including his wrists (which were not addressed at step four despite a finding of carpal tunnel release), and pain including a diagnosis of rheumatoid arthritis. The undersigned Magistrate Judge agrees that the ALJ's RFC assessment was deficient. Once the ALJ determined that the claimant had *any* severe impairment, any failure to find additional severe impairments will not be a sole basis for reversal and is considered harmless. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. Nevertheless, the ALJ *is required* consider the effects of all the impairments (individually and in combination) and account for them in formulating

the claimant's RFC at step four, which he did not do. Specifically, the ALJ overtly failed to account for the claimant's nonsevere impairments in assessing his RFC. Additionally, the ALJ failed to properly assess the combined effect of all the claimant's impairments – both severe and nonsevere – in assessing his RFC. Both of these errors require reversal. *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Grotendorst's mental impairments were not severe, she gave those impairments no further consideration. This was reversible error."). *See also McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]").

As to Dr. Olafsson's letter stating that the claimant was disabled, although an ALJ is not required to give controlling weight to an opinion that the claimant could not return to work, *see, e. g.,* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), he *is required* to determine the proper weight to give that opinion by applying the factors in 20 C.F.R. § 404.1527, specifically in relation to functional limitations. Instead, the ALJ focused on the fact that the claimant had not been prescribed a nebulizer and only used an inhaler. *See Langley,*

373 F.3d at 1119. *See also Miller v. Barnhart*, 43 Fed. Appx. 200, 204 (10th Cir. 2002); Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3 (July 2, 1996) ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."). This error is also problematic because, since Dr. Olafsson's letter predated the alleged onset date, it indicates that the ALJ did not conduct a proper longitudinal assessment of the claimant's impairments under 20 C.F.R. § 404.1520a(c)(1) ("Assessment of functional limitations . . . requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation."). *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F2d 382, 385-386 (7th Cir. 1984).

Finally, the claimant contends that the ALJ erred in analyzing his credibility. At the time of the ALJ's decision, a credibility determination was governed by Soc. Sec. Rul. 96-7p. *See, e .g., Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (July 2, 1996). But the Commissioner issued a ruling on March 16, 2016, that eliminated the term "credibility" and provided new guidance for evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016). "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior

decision." *Frantz v. Astrue,* 509 F.3d 1299, 1302 (10th Cir. 2007), *quoting Sloan v. Astrue,* 499 F.3d 883, 889 (8th Cir. 2007). Although the ALJ's credibility analysis was arguably sufficient under the old standard, the record does not reflect how the ALJ would have evaluated the claimant's subjective statements under Soc. Sec. Rul. 16-3p.[3] Consequently, the decision of the Commissioner must be reversed and the case remanded to the ALJ for evaluation in accordance with the new standard.

**Conclusion**

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 10th day of March, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**

---

[3] While it is arguable that the evidence cited by the ALJ in support of his credibility determination would likewise have satisfied Soc. Sec. Rul. 16-3p, thus obviating the need for reversal and remand, *see, e. g., Wellenstein v. Colvin,* 2015 WL 5734438, at *11 (N.D. Iowa Sept. 30, 2015) (noting that the Court of Appeals for the Eighth Circuit denied remand for consideration of a new social security ruling upon finding that "although the policy changed during the pendency of the case, the policy did not affect the case."), *citing Van Vickle v. Astrue,* 539 F.3d 825, 829 n.6 (8th Cir. 2008), the undersigned Magistrate Judge finds that any re-evaluation of the evidence in light of the new standard is not for this court to make on review but rather for the ALJ to consider in the first instance.